Beaul V. HESTER,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 55A01–8912–CR–510.

Court of Appeals of Indiana,
First District.

March 29, 1990.

income interest, when the gift of income was to a class.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Beaul V. Hester appeals a jury verdict finding him guilty of Burglary [1] and Theft.[2] We reverse.

## FACTS

On the afternoon of September 14, 1988, Deputy Furrer of the Johnson County Sheriff's Department received a dispatch to be on the lookout for a blue "Camaro-type" vehicle that had been seen around several recent burglaries in the area. At approximately 12:45 p.m., Deputy Furrer saw two men in a car matching that description and pulled them over. Hester was driving the blue Firebird on a learner's permit, and Scott Settles was the passenger. Deputy Furrer also noticed a portable television set on the back seat of the Firebird. Upon determining that the car was improperly registered, the Deputy ordered the vehicle to be impounded. Hester and Settles were taken in for questioning and then released.

The wrecker driver who was called to tow the Firebird smelled a strong odor of gasoline coming from the car. He was afraid that gasoline was leaking, so he opened the trunk to make sure it was safe. Inside the trunk the driver saw cameras and what he believed to be guns. The driver notified the Sheriff's Department of what he had found.

A search warrant was issued for the Firebird, which authorized the seizure of any items that may have been taken from six (6) homes that had been burglarized between July 11, 1988 to September 6, 1988. The search resulted in the seizure of several items, including the portable television seen by Furrer, some video equipment, and several guns.

The next day, the Johnson County Sheriff's Department received a call from the Morgan County Sheriff's Department. The Morgan County authorities stated that the Smiths' home had been burglarized on the previous day. The list of items taken from

Michael E. Hunt, Bloomington, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

1. *See* IND.CODE § 35–43–2–1, 35–50–2–5.

2. *See* IND.CODE § 35–43–4–2(a), 35–50–2–7.

the Firebird, except for one item, matched the list of items taken from the Smith home.

Hester was arrested and charged by information with burglary and theft. Hester's motion to suppress the evidence taken from the Firebird was denied. Settles testified at Hester's trial, and admitted that he and Hester had broken into the Smiths' home and took the various items that were later found in the Firebird. The jury found Hester guilty of burglary and theft. Hester was sentenced to twenty (20) years on the burglary charge, and four (4) years on the theft charge, to be served concurrently.

Hester now appeals his conviction, claiming that the trial court erred in not suppressing the evidence taken from the Firebird.

## ISSUES

1. Does Hester have "standing" to challenge the search of the Firebird?

2. Did the trial court err in finding that probable cause supported the issuance of the search warrant?

3. Did the trial court err in admitting evidence of items found pursuant to a search warrant that failed to identify specific items to be sought and failed to refer to the burglary and theft with which Hester was charged?

4. Even if the search warrant was invalid, was the evidence found in the Firebird admissible either under the "good faith" exception to the exclusionary rule or given that the items would have been found as a result of a valid inventory search?

5. Even if the evidence found in the trunk of the Firebird was improperly admitted at trial, was the portable television seen by Deputy Furrer properly admitted under the "open view" doctrine?

## DISCUSSION AND DECISION

*Issue One*

■ We first address the issue of whether Hester has "standing" to challenge the search of the Firebird at all. A defendant has no constitutional right to challenge the search or seizure of another person's property. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 898. The State correctly notes that Hester has claimed no property interest in either the Firebird or the items found inside. However, there was no evidence that Hester did not have permission to drive the Firebird when Officer Furrer pulled him over. Hester thus had an expectation of privacy in the vehicle over which he was exercising control. *See United States v. Griffin* (7th Cir.1984), 729 F.2d 475, 483 n. 11; *cert. denied* 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60; *United States v. Posey* (7th Cir.1981), 663 F.2d 37, 41, *cert. denied* 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679. Therefore, we hold that Hester has a constitutional right to challenge the search of the Firebird and the seizure of the items found therein.

*Issue Two*

■ Hester alleges that the search warrant should not have been issued at all. Before a search warrant may be issued, a determination of probable cause must be made by a judge. *Wade v. State* (1986), Ind., 490 N.E.2d 1097, 1102. In the present case, the search warrant was issued based on oral testimony rather than on an affidavit, and neither the tape nor a transcript of the probable cause hearing was available to the trial court. On appeal, Hester claims that because the trial court failed to review the testimony given at the probable cause hearing, the trial court committed reversible error.

We do not agree. Our review of the record before us indicates that at the hearing on Hester's motion to suppress, Hester did not challenge the issuing court's finding of probable cause. Hester's sole claim of error was that the search warrant was insufficiently specific. A criminal defendant may not object on one basis at trial and assert a different basis on appeal. *Ingram v. State* (1989), Ind., 547 N.E.2d 823, 829; *Daniel v. State* (1988), Ind., 526 N.E.2d 1157, 1162. Because the issue of whether probable cause supported the issuance of the search warrant was not

raised by Hester prior to this appeal, he has waived it.

*Issue Three*

■ Hester next asserts that the search warrant for the Firebird was insufficiently specific, and was used by the Johnson County Sheriff's Department to engage in a "fishing expedition". Both the Indiana and United States Constitutions proscribe general search warrants. U.S. Const.Amend. 4; Ind. Const. Art. 1, § 11. A warrant may not issue unless it describes with particularity the place to be searched and the items to be seized; a warrant which leaves the executing officer with discretion is invalid. *Hewell v. State* (1984), Ind.App., 471 N.E.2d 1235, 1238.

The State claims that although a search warrant must describe with some specificity the items to be searched for and seized, there is no requirement that there be an exact description. *Phillips v. State* (1987), Ind., 514 N.E.2d 1073, 1075. The search warrant in the present case authorized the Sheriff's Department to search for and seize the following:

"Any and all property which may have been the subject of Theft or Burglary occurring in Union Township, Johnson County, Indiana, from the residences of Noble Spicer, R.R. # 1, Box 102, Morgantown, Indiana, date September 6, 1988; Rita Akers, 6683 W. Division, Morgantown, Indiana, date July 29, 1988; Steve Harris, R.R. # 1, Box 58, Morgantown, Idniana [sic], date July 26, 1988; Patrick Beard, R.R. # 1, Box 184, Morgantown, Indiana, date July 22, 1988; and Robert Waltz, 5505 600 W. Bargersville, Indiana, date July 11, 1988."

Record at 83. This warrant fails to describe in any detail precisely what items were taken in the robberies listed. It is undisputed that no items found in the Firebird were described in the warrant. Indeed, all of the items found, save one, were later determined to have been taken from the Smith home.

The search warrant in the present case fails to describe sufficiently the items to be searched for, and gives unbridled discretion to the executing officers. Therefore, we

hold that the trial court erred in finding that the search warrant was valid. The State notes that the warrant failed to list items taken from the Smith home because the "Johnson County Sheriff's Department had no knowledge of the Smith's [sic] burglary until contacted by the Morgan County Sheriff's Department on the day after the search warrant was executed." State's brief at 7. We find this to be no justification for what amounts to a general warrant, such as that issued here.

*Issue Four*

■ Having determined that the search warrant was invalid, we now turn to the State's two arguments in support of its contention that the trial court did not err in admitting at Hester's trial the evidence found in the Firebird. First, the State submits that the "good faith" exception to the exclusionary rule applies in this case. This exception allows, in certain circumstances, the use of evidence seized in good faith reliance on a search warrant that is ultimately held to be invalid. *United States v. Leon* (1984), 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677, 699; *Blalock v. State* (1985), Ind., 483 N.E.2d 439, 444. However, the *Leon* exception would require the exclusion of the evidence found in the Firebird if the warrant were so facially deficient that it could not be reasonably relied upon by the executing officers. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699; *see also Kail v. State* (1988), Ind.App., 528 N.E.2d 799, 808, *trans. denied.*

We do not believe that the search warrant before us falls under the *Leon* "good faith" exception. As we have already indicated, the warrant provided absolutely no description of the items to be searched for and seized, other than that the items may have been the subject of several previous burglaries. Such a vague description allowed the officers complete discretion when executing the warrant, and no reasonably trained police officer could have believed that the search warrant was valid. Therefore, we find that the *Leon* exception to the exclusionary rule does not apply in the present case.

The State next argues that the use of the seized evidence at trial was proper because even without a valid search warrant, the evidence could have been found during a routine inventory search of the impounded vehicle. Where a vehicle is lawfully impounded, officers are justified in conducting an inventory search, and a warrant is not required. *Freeman v. State* (1989), Ind., 541 N.E.2d 533, 537. Such an inventory search must be carried out in accordance with "established and routine department procedures which are consistent with the protection of the police from potential danger and false claims of lost or stolen property and the protection of the property of those arrested." *Rabadi v. State* (1989), Ind., 541 N.E.2d 271, 275; *see also Paschall v. State* (1988), Ind., 523 N.E.2d 1359, 1361–62.

In the present case, the Firebird was lawfully impounded because it was found to be improperly registered.[3] After being notified by the wrecker driver that guns and various camera equipment were inside the trunk, the Johnson County Sheriff's Department obtained a warrant and searched the vehicle. There is no indication in the record before us that an inventory search was conducted pursuant to standardized procedures; on the contrary, the Firebird was searched for the sole purpose of investigation. Inventory searches cannot be used as a pretext for an investigatory search. *Rabadi*, 541 N.E.2d at 275. The evidence found in the Firebird was not admissible as the product of a proper inventory search.

*Issue Five*

When a police officer views contraband prior to an intrusion into a constitutionally protected area, no "search" in the constitutional sense has occurred. *Sayre v. State* (1984), Ind.App., 471 N.E.2d 708, 712. When a police officer properly stops a vehicle, no "search" occurs when the officer merely looks in the vehicle to see what is inside; evidence found in such "open view" is not seized as a product of a search. *Avant v. State* (1988), Ind., 528

N.E.2d 74, 76; *Cheeks v. State* (1977), 266 Ind. 190, 361 N.E.2d 906, 909. In the present case, Deputy Furrer stopped Hester, who was in a car matching the description of a car seen at recent burglaries in the area. Furrer saw a portable television set on the back seat of the car which was later determined to have been taken from the Smith home. Furrer's view of the television set was lawful, and did not constitute a "search."

However, our analysis does not end here. Although the view may have been lawful, we must determine whether the subsequent seizure of the television was lawful as well. "[A]n officer must have probable cause to believe that the property to be seized is connected to criminal activity." *Cochran v. State* (1981), Ind. App., 429 N.E.2d 672, 674. Deputy Furrer stopped the Firebird because its description matched that of a car that had been seen at recent burglaries, and he saw a television set in the back seat. There was nothing about the television set to indicate to Deputy Furrer that it was the fruit of criminal activity, and he thus did not have probable cause to seize the television at that time. *See id.*

Even if Deputy Furrer did have probable cause to seize the television, we note that "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances'." *Sayre*, 471 N.E.2d at 713 (quoting *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564, 584). Exigent circumstances may be presumed from the fact that an automobile is readily movable and that evidence contained in an automobile can be easily moved or destroyed. *Murphy v. State* (1986), Ind., 499 N.E.2d 1077, 1081; *Cochran*, 429 N.E.2d at 674. However, once the Firebird was impounded, any exigent circumstances ceased to exist.

The proper procedure at this point would have been either to obtain a valid search warrant, or to conduct a proper inventory search. As we have already indicated, the Johnson County Sheriff's Department failed to do either of these things. There-

---

**3.** See IND.CODE § 9–9–5–5.

fore, the seizure of all items found in the Firebird was illegal, and the trial court erred in admitting these items into evidence.

■ Our next inquiry is whether the admission of the evidence at trial requires the reversal of Hester's conviction. We note that the admission of illegally seized evidence does not necessarily require a reversal; however, we may affirm:

"... only if the error was harmless beyond a reasonable doubt. *Chapman v. California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *United States v. Posey,* (7th Cir.1981) 663 F.2d 37 *cert. denied* (1982) 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679; *Ortez v. State,* (1975) 165 Ind.App. 678, 333 N.E.2d 838, *trans. denied* (1976). In *Candler v. State,* (1977) 266 Ind. 440, 363 N.E.2d 1233, 1240, our supreme court further defined this standard in exclusionary rule cases stating an appellate court may affirm the conviction if the evidence, which should have been excluded 'made no contribution to the verdict.' "

*Hewell,* 471 N.E.2d at 1239.

■ We cannot say that the admission of the illegally seized evidence made no contribution to the jury's verdict. Absent the evidence of what was found in the Firebird, the only direct evidence that Hester was guilty of burglary and theft was the testimony of Scott Settles. Settles agreed to testify against Hester because he was offered a deal by the State regarding charges pending against him, thus raising some doubt concerning the reliability of his testimony. *See id.* at 1240. We note that erroneously admitted evidence is harmless only if the properly admitted evidence supporting the guilty verdict is not only substantial but overwhelming. *Manetta v. State* (1988), Ind., 527 N.E.2d 178, 179. Such is not the case here.

The trial court's judgment is reversed.

ROBERTSON and BAKER, JJ., concur.